1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WILLIAM V. STICKLE,                          No.  2:12-cv-1397-KJM-EFB P

12              Plaintiff,

13        v.                                       ORDER AND FINDINGS AND
                                                   RECOMMENDATIONS
14   R. COOK, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

18   U.S.C § 1983.  Defendants Williams and Wohlers move for summary judgment.  ECF No. 35.

19   For the reasons that follow, it is recommended that the motion be granted as to defendant

20   Williams but denied as to defendant Wohlers.  Further, because the docket shows that defendant

21   Cook was not served with the complaint prior to removal, the court will direct the United States

22   Marshal to serve defendant Cook.[1]

23        **I.      Background**

24        This action proceeds on the complaint filed on March 10, 2011 in Amador County

25   Superior Court.  ECF No. 2 at 6-28.  Defendant Wohler removed the action to this court on May

26   23, 2012.  ECF No. 2.  Defendants Williams and Cook had not yet been served at that time.  *Id.*

27   _____

28        [1]  Plaintiff was granted leave to proceed *in forma pauperis* on September 17, 2012.  ECF
     No. 13.

                                                1

1   n.1; ECF No. 9 (showing service on defendant Cook by the county sheriff's office on May 29,

2   2012); ECF No. 22 (defendant Williams's Notice of Appearance following service by the U.S.

3   Marshal).  Plaintiff alleges that defendants violated his Eighth Amendment rights with regard to

4   their treatment of a surgical incision in his hip.  ECF No. 2 at 6-28.  As defendant Cook is not a

5   party to the instant motion, only plaintiff's allegations regarding defendants Wohlers and

6   Williams are summarized here.

7          It is undisputed that plaintiff had a lipoma excised at San Joaquin General Hospital on

8   February 1, 2008, while he was housed at Mule Creek State Prison ("MCSP").  ECF No. 35-3 at

9   8.  Plaintiff alleges that the wound required packing and bandaging, but, at some point following

10  the surgery, Wohlers, a registered nurse at MCSP, told Cook, a licensed vocational nurse at

11  MCSP, not to pack the wound or bandage it.  ECF No. 2 at 10.  Plaintiff further alleges that he

12  came to Wohlers on many occasions in extreme pain and asking for help.  *Id.*  On one occasion,

13  according to plaintiff, Wohlers sadistically slapped plaintiff's bandaged wound.  *Id.* at 12.  The

14  wound was packed with gauze, so the slap shoved the bandaging further into the wound causing

15  pain, bleeding, and torn stitches.  *Id.*  Allegedly, plaintiff screamed, and Wohlers laughed.  *Id.* at

16  26.

17         Plaintiff alleges that he filed an inmate appeal informing Williams, a physician and the

18  health care manager at MCSP, of his pain but Williams did nothing.  *Id.* at 10.  According to

19  plaintiff, Williams knew of plaintiff's serious medical needs for antibiotics and bandages, but

20  Williams did not address these needs.  *Id.* at 14, 20.  Plaintiff claims that he received the

21  necessary antibiotics only after friends and family complained.  *Id.* at 14.

22         Wohlers and Williams provide the following relevant facts:

23         A lipoma is a growth of fat cells in a thin and fibrous capsule usually found just
            below the skin.  Lipomas are not cancerous growths and cannot become
24         cancerous, and thus usually require no treatment.

25         However, a lipoma may need to be surgically removed if symptoms develop, such
            that the lipoma becomes painful or tender; becomes infected or in flamed
26         repeatedly; drains foul-smelling discharge; interferes with movement or function;
            increases in size; or becomes unsightly or bothersome.
27

28  /////

2

Most lipomas are removed in a doctor's office with the physician injecting local anesthetic around the lipoma, making an incision in the skin, removing the growth, and closing the incision with stitches or sutures to achieve hemostasis (stoppage of bleeding).  As with most surgeries, there are risks associated with lipoma excision, including surgical infection, muscle injury and irritation, and hematoma formation.

A hematoma is a localized collection of blood outside the blood vessels usually in liquid form within the tissue.  It occurs because the wall of a blood vessel, vein, artery or capillary has been damaged and blood has leaked into tissues where it does not belong.  Small and symptom-free hematomas usually require no medical treatment.  Painful hematomas can be treated with over the counter pain medications such as Tylenol (acetaminophen), while hematomas symptomatic may require surgical drainage.

Following the excision of a lipoma, a pressure dressing is usually applied to reduce the incidence of hematoma formation, the patient is given routine wound care instructions, sutures are removed after seven to 21 days, and specimens are submitted for histologic analysis.  Post-operative wound care can also include the use of wet-to-dry dressings, which involves placing a moist dressing on the wound and allowing it to dry, and later removing the dressing to take with it the exudate, debris, and nonviable tissue that have become stuck to the gauze.  If an infection develops, antibiotics are normally used to stop the growth of bacteria.

\*\*\*

On November 14, 2007, a physician request for services was submitted for Stickle to have a lipoma on his hip excised because it was painful.

\*\*\*

On February 1, 2008, Stickle had the lipoma excised under local anesthetic at San Joaquin General Hospital, with the pathology report showing no malignancy.  On the same day, after he returned to Mule Creek, Stickle was seen at the Triage Treatment Area ("TTA") complaining of pain and swelling.  Stickle was given Vicodin (acetaminophen and hydrocodone), a pressure dressing was applied and Stickle was ordered to return to the TTA on February 4, 2008.

On February 2, 2008, Stickle was seen in the TTA complaining of bleeding from his excision site.  He had a dry dressing change and was ordered to notify staff if there was increased bleeding and discomfort.

On February 4, 2008, Stickle was seen in the TTA, where his dressing was changed, he was given Vicodin, and orders were issued for blood work and a follow-up.  A request for Stickle to be seen by the surgeon was also submitted.  On February 11, 2008, Stickle's dressing was changed.  On February 14, 2008, orders were given for Stickle's dressing to be changed.

On February 15, 2008, Stickle was seen for a follow-up at San Joaquin General Hospital, where it was noted that Stickle had hematoma with post-surgery bleeding.  Orders were given for Stickle to take Vicodin and Keflex (semisynthetic cephalosporin antibiotic), and to return for a follow-up in 10 days.  On the same day, Stickle returned to Mule Creek and orders were issued for Vicodin, Keflex and a follow-up.

3

1

2

3

4

On February 17 and 18, 2008, Stickle's incision site was cleaned and the dressing was changed.  On February 20, 2008, Stickle was examined at the clinic, at which time his dressing was changed, orders were given for him to return to the clinic, and it was noted that he had an upcoming follow-up with the surgeon.  On February 21, 2008, Stickle's incision site was cleaned and the dressing was changed.

5

6

On February 22, 2008, Stickle had a follow-up at San Joaquin General Hospital.  Stickle's wound was opened, the hematoma drained, and the wound was irrigated and packed, and he returned to Mule Creek in a stable condition.

7

8

9

10

11

On February 24, 2008, Stickle's incision site was cleaned and the dressing was changed.  On February 25, 2008, Stickle was examined at the clinic, at which time his dressing was changed and orders were given for daily dressing changes in the TTA.  On February 27, 2008, Stickle was seen in the TTA complaining of a burning pain in his hip.  The packing was changed, blood work collected and Stickle was ordered to go to the clinic the next day.  On February 28, 2008, Stickle was seen [at] the clinic where it was noted that his wound was looking much better compared to the last visit.  It was ordered that Stickle continue having daily dressing changes in the TTA.

12

13

On February 29, 2008, Stickle was seen [at] San Joaquin General Hospital.  The surgeon recommended daily showers and washing of wound, dressing changes twice daily and a prescription of Vicodin and clindamycin (antibiotic) for the infection.

14

15

During the first week of March 2008, Stickle was seen for his dressing changes, as well as in response to a complaint that he had the flu.

16

17

On March 7, 2008, Stickle was seen at San Joaquin General Hospital, where it was noted that Stickle's infection had improved.  The surgeon recommended daily showers, wet to dry wound packing twice daily, and for Stickle to finish his course of antibiotics.

18

19

During the second week of March 2008, Stickle continued to receive dressing changes and it was noted that his wound was healing.

20

21

22

23

On March 14, 2008, [Stickle] was seen at San Joaquin General Hospital, at which time the surgeon noted that the wound was healing and looking much better.  The surgeon recommended that Stickle continue daily showers and washing of the wound, light packing twice daily, a prescription of Vicodin and baclofen (to decrease the number and severity of muscle spasms) and a follow-up in two weeks.  On the same day, Stickle failed to come to the clinic for a dressing change.

24

25

26

On March 15, 2008, Stickle again failed to come to the clinic for one of his dressing changes.  Stickle had regular dressing changes that week except on the evening of March 20, 2008, when there was a lock-down on his yard.

27

28

A physician's examination on March 21, 2008, revealed that Stickle's wound was healing well and was closing from deep to superficial.  On the same day, Stickle submitted an inmate appeal complaining that L.V.N. Cook violated CDCR

4

1   regulations when she yelled at him after he told her that he had not received his
dressing changes as the surgeon had ordered.

2   From March 22 to 27, 2008, Stickle continued to have regular dressing changes.
Stickle was also seen by medical staff on March 22, 2008 in response to a

3   complaint that he had a cough.  Stickle was interviewed on March 26, 2008 at the
informal level in response to his inmate appeal.

4

5   On March 27, 2008, L.V.N. Cook responded to Stickle's inmate appeal at the
informal level.  She noted that Stickle's dressing had been changed twice daily

6   except on March 14 and 15, 2008 when Stickle failed to show to the clinic, and on
March 20, 2008 due to a lockdown.  L.V.N. Cook also noted that she had given

7   Stickle a blue ducat (medical pass) so that he would be released to the clinic
during lock-downs for his dressing changes.

8

9   On March 28, 2008, Stickle was seen at San Joaquin General Hospital, at which
time the surgeon noted that Stickle's wound looked good.  He recommended that

10  Stickle stop taking baclofen, be given Tylenol, take daily showers, have dressing
changes twice a day and return for a follow-up in two weeks.

11

12  From March 28 to April 11, 2008, Stickle continued to have regular dressing
changes except on those occasions when he failed to show to the clinic.

13  In particular, on March 29, 2008, during her evening shift that day, R.N. Wohlers
saw Stickle at the clinic for his ordered dressing change.  Her examination

14  revealed that although there was slight discharge from a pea-sized hole in the
excision site, the wound was healing.  Stickle was in a stable condition and did

15  not complain of pain.  R.N. Wohlers changed his dressing as ordered.  On March
30, 2008, during her evening shift that day, R.N. Wohlers saw Stickle at the clinic

16  for his ordered dressing change.  Her examination revealed no drainage, and she

17  changed Stickle's dressing as ordered.  On March 31, 2008, when R.N. Wohlers
was on duty, Stickle failed to attend the clinic for his scheduled evening dressing

18  change.  On April 2, 2008, R.N. Wohlers saw Stickle in response to his request
for a HIV and Hepatitis C screening, at which time he also complained of a

19  cough. R.N. Wohlers prescribed cough drops and recommended a follow-up.
Stickle's blood work subsequently revealed that he had tested positive for

20  Hepatitis C.

21

22  On April 6, 2008, Stickle failed to attend the clinic for his scheduled dressing
change.  On the same day, Stickle submitted his inmate appeal at the first formal

23  level, claiming that L.V.N. Cook's informal response was not truthful.  Stickle
alleged that L.V.N. Cook was unprofessional because she yelled at him.  He

24  requested that L.V.N. Cook be instructed in proper medical staff conduct and that
she not interfere with his treatment.

25

26  On April 11, 2008, Stickle was seen at San Joaquin General Hospital, at which
time the surgeon's examination revealed that Stickle's wound had completely

27  healed.

28  /////

5

1
2
3
4
5
6

On May 12, 2008, R.N. Wohlers interviewed Stickle in response to his first level appeal regarding L.V.N. Cook's allegedly unprofessional conduct. R.N. Wohlers informed Stickle that all corrective actions against a staff member were up to the supervisor's discretion. On May 18, 2008, Stickle submitted a second level appeal regarding L.V.N. Cook's allegedly unprofessional conduct. On June 27, 2008, Dr. Williams responded to Stickle's inmate appeal at the second level, finding that Stickle's health care chart supported L.V.N. Cook's response at the informal level, as Stickle had been receiving appropriate dressing changes. Dr. Williams also found that Stickle's health care chart demonstrated that his treatment at Mule Creek had been medically appropriate and timely.

7

***

8
9
10

On October 27, 2008, Stickle received a third level response to his appeal, which found that a review of Stickle's health record indicated that there was no evidence that Mule Creek medical staff failed to provide him adequate medical care.

11    ECF No. 35-1 at 9-15. Plaintiff's rebuttal to defendants' proffered facts consists of a photocopy

12    of defendants' recitation of facts with handwritten notes in the margin. ECF No. 50 at 25-28.

13    The notes that are legible indicate plaintiff's assertions that: (1) he did not receive antibiotics until

14    five days after they were ordered on February 15, 2008, which was 20 days after his surgery (*id.*

15    at 25); (2) defendants' statement that his wound was looking better on February 28, 2008 is false

16    because by that time the wound had become infected (*id.* at 26); and (3) the wound took almost

17    two months to begin to heal well (*id.* at 27). An illegible note in the margin indicates that

18    plaintiff has some response to defendants' assertion that his wound was healing in the second

19    week of March 2008. *Id.* at 27. The court will assume that plaintiff disputes that fact.

20        **II.    Service on Defendant Cook**

21        The docket reveals that although Cook was served by the county sheriff's office in the

22    state court action on May 29, 2012, this case had already been removed to federal court on May

23    23, 2012. ECF Nos. 9, 2. Under 28 U.S.C. § 1448, where service has not been completed prior to

24    removal, service may be completed or new process issued "in the same manner as in cases

25    originally filed in . . . [the] district court." As plaintiff has been granted leave to proceed *in forma*

26    *pauperis*, the court will order the United States Marshal to serve the complaint on defendant Cook

27    once plaintiff has returned the necessary materials for service, as provided in the Order section

28    below.

6

1    **III.    Defendants' Motion for Summary Judgment**

2        **A.    Summary Judgment Standard**

3        Summary judgment is appropriate when there is "no genuine dispute as to any material

4    fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

5    judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

6    to the determination of the issues in the case, or in which there is insufficient evidence for a jury

7    to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

8    (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

9    *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

10   motion asks whether the evidence presents a sufficient disagreement to require submission to a

11   jury.

12       The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

13   or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

14   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

15   trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

16   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

17   under summary judgment practice, the moving party bears the initial responsibility of presenting

18   the basis for its motion and identifying those portions of the record, together with affidavits, if

19   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

20   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

21   party meets its burden with a properly supported motion, the burden then shifts to the opposing

22   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

23   *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

24       A clear focus on where the burden of proof lies as to the factual issue in question is crucial

25   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

26   summary judgment does not necessarily need to submit any evidence of its own.  When the

27   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

28   need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

1    *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

2    which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

3    24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

4    issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

5    depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

6    should be entered, after adequate time for discovery and upon motion, against a party who fails to

7    make a showing sufficient to establish the existence of an element essential to that party's case,

8    and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

9    circumstance, summary judgment must be granted, "so long as whatever is before the district

10   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

11   satisfied."  *Id.* at 323.

12       To defeat summary judgment the opposing party must establish a genuine dispute as to a

13   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

14   is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

15   248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

16   will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

17   determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party

18   is unable to produce evidence sufficient to establish a required element of its claim that party fails

19   in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

20   of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.

21   at 322.

22       Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

23   the court must again focus on which party bears the burden of proof on the factual issue in

24   question.  Where the party opposing summary judgment would bear the burden of proof at trial on

25   the factual issue in dispute, that party must produce evidence sufficient to support its factual

26   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

27   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

28   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

1    for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

2    demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

3    that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

4    477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

5         The court does not determine witness credibility.  It believes the opposing party's

6    evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

7    *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

8    proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

9    *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

10   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

11   issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

12   Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is

13   some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

14   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

15   trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant

16   summary judgment.

17        Concurrent with the instant motions, defendants advised plaintiff of the requirements for

18   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 36; *see*

19   *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir.

20   1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409

21   (9th Cir. 1988).

22                **B.    Analysis**

23        The Eighth Amendment to the U.S. Constitution protects prisoners from inhumane

24   methods of punishment and inhumane conditions of confinement.  *Morgan v. Morgensen*, 465

25   F.3d 1041, 1045 (9th Cir. 2006).  "[T]he unnecessary and wanton infliction of pain . . . constitutes

26   cruel and unusual punishment forbidden by the Eighth Amendment."  *Ingraham v. Wright*, 430

27   U.S. 651, 670 (1977).  While routine discomfort is part of prison life, a prison official's malicious

28   and sadistic use of force to cause harm violates the Eighth Amendment where the force is of the

                                                9

1    sort "'repugnant to the conscience of mankind.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)

2    (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

3          In addition, medical care may be so deficient as to violate the guarantee of the Eighth

4    Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To prevail on an Eighth

5    Amendment claim predicated on poor medical care, a plaintiff must show that he had a serious

6    medical need and that the defendant's response to that need was deliberately indifferent.  *Jett v.*

7    *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle*, 429 U.S. at 106.  A serious

8    medical need exists if the failure to treat the plaintiff's condition could result in further significant

9    injury or the unnecessary and wanton infliction of pain.  *Jett*, 439 F.3d at 1096.  A defendant has

10   been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b)

11   failed to adequately respond.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

12         On the other hand, neither a defendant's negligence nor a plaintiff's general disagreement

13   with the treatment he received suffices to establish deliberate indifference.  *Estelle*, 429 U.S. at

14   106; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838

15   F.2d 390, 394 (9th Cir. 1988).  Rather, the plaintiff must show that the course chosen by the

16   defendant was medically unacceptable under the circumstances.  *Jackson*, 90 F.3d at 332.

17         Finally, "a prison official can violate a prisoner's Eighth Amendment rights by failing to

18   intervene" to prevent a violation imposed by someone else.  *Robins v. Meecham*, 60 F.3d 1436,

19   1442 (9th Cir. 1995).  A defendant-officer may be held liable for failing to intervene when he had

20   enough time to observe what was happening and to intervene and prevent or curtail the violation,

21   but failed to do so.  *See Lanier v. City of Fresno*, No. 1:10-cv-1120-LJO-SKO, 2010 U.S. Dist.

22   LEXIS 130459, at *6 (E.D. Cal. Dec. 8, 2010) (citations omitted).

23                        **i.        Defendant Wohlers**

24         Wohlers argues that the evidence shows that plaintiff received appropriate wound-care

25   and that her interaction with plaintiff was limited to providing a single dressing change and

26   responding to plaintiff's administrative appeal at the first level.  ECF No. 35-1 at 20.  She

27   contends that "any alleged failure to properly change Stickle's dressing is simply an "isolated

28   /////

1    occurrence of neglect."  These arguments fail to demonstrate the absence of a genuine material

2    dispute, however, because they do not actually address plaintiff's allegations against Wohlers.

3           Plaintiff alleges that Wohlers purposefully directed a subordinate not to provide plaintiff

4    with the treatment he required (packing and dressing of the wound).  Plaintiff additionally alleges

5    that Wohlers sadistically slapped his wound, causing him pain, and laughed about it.  Wohlers has

6    not shown that there are no genuine factual disputes as to these allegations; in fact, she fails to

7    address these allegations in her brief at all.  While Wohlers states in her declaration that she did

8    not slap the wound or refuse plaintiff treatment (ECF No. 35-3 at 20), this merely underscores

9    that disputed issues of material fact exist which preclude summary judgment.  The conflict

10   between the two percipient witnesses merely creates a credibility issue (as to whether defendant

11   Wohlers or plaintiff is to be believed) that cannot be resolved at this stage.

12          Wohlers also argues that she should be granted qualified immunity, but presents no

13   argument in support of qualified immunity apart from the denial that she violated plaintiff's rights

14   in the first place.  Rather, she simply rehashes her argument that the facts do not establish an

15   Eighth Amendment violation—an argument that does not actually address the facts as alleged by

16   plaintiff.  She argues that "if she changed Stickle's dressings as ordered by the physician when

17   she was on duty," a reasonable nurse in her position would have thought her actions lawful.

18   While that is hardly a controversial proposition, it ignores the actual allegations leveled against

19   her.  Because her claim of qualified immunity is predicated on her denial of ever having

20   sadistically slapped the wound, and discounts entirely the nature of the factual dispute requiring a

21   credibility determination, summary judgment cannot be granted to Wohlers on this basis.  *See*

22   *Torres v. City of Los Angeles,* 548 F.3d 1197, 1210-11 (9th Cir. 2008).

23                          **ii.      Defendant Williams**

24          It is undisputed that Williams' only involvement in the treatment of plaintiff's surgical

25   incision was to respond to plaintiff's health care appeal.  *See* ECF No. 35-4 at 18-36.  In that

26   appeal, plaintiff complained that Cook had yelled at him after he told another nurse that his

27   bandage had not been changed as frequently as ordered.  *Id.* at 29.  At the second level of review,

28   which plaintiff submitted on March 21, 2008, Williams responded that the issue of disciplining

                                                    11

1   Cook was a confidential matter and that "the review of your health care chart reveals your

2   treatment here at Mule Creek State Prison has been appropriate and timely." *Id.* at 35.  In seeking

3   the third level of review, plaintiff responded to the latter assertion by stating that he had been

4   denied antibiotics for 20 days following surgery and also denied bandages and sufficient dressing

5   changes. *Id.* at 32.  N. Grannis, the third-level reviewer, also concluded that plaintiff's care was

6   adequate. *Id.* at 18-19.  Plaintiff's opposition brief focuses solely on the denial of antibiotics

7   following surgery.  ECF No. 50 at 13-19.

8          Williams, citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), argues that there is

9   no constitutional right to a prison grievance system, so any failure on his part to adequately

10   respond to plaintiff's grievance cannot as a matter of law constitute a constitutional violation.

11   Several courts, including this one, have disagreed.  *See, e.g., Coleman v. Adams*, 2010 U.S. Dist.

12   LEXIS 62197 (E.D. Cal. June 22, 2010); *Arreola v. Dudley,* 2010 U.S. Dist. LEXIS 87441 (E.D.

13   Cal. July 30, 2010); *Herrera v. Hall*, 2010 U.S. Dist. LEXIS 70611 *4 (E.D. Cal. July 14, 2010).

14   These courts have generally reasoned that, although *Ramirez* and *Mann v. Adams*, 855 F.2d 639,

15   640 (9th Cir. 1988) prohibit Due Process claims regarding the handling of appeals, they "do not

16   touch upon whether an appeal reviewer's actions can be considered 'cruel and unusual' within the

17   meaning of the Eighth Amendment." *Coleman*, 2010 U.S. Dist. LEXIS 62197 at *7.  In

18   *Coleman*, the district court reasoned that the plaintiff's reference to his administrative appeal (in

19   that case, a request for a lower bunk and pain medication needed to treat previous injuries)

20   "merely bolsters his allegation that supervisory personnel had actual awareness of the risk to

21   Plaintiff's safety."

22          As this court explained in *Coston v. Nangalama*, No. 2:10-cv-2009 MCE EFB P, 2013

23   U.S. Dist. LEXIS 27876, at *17-22 (E.D. Cal. Feb. 28, 2013) (adopted in part and rejected in part

24   by 2013 U.S. Dist. LEXIS 46308 (E.D. Cal. Mar. 29, 2013) (granting qualified immunity because

25   the law was not clearly established in 2008), the Ninth Circuit has not ruled on the question and

26   the district courts are divided, even within the Eastern District of California.  This court found in

27   *Coston* that medical personnel may be liable under the Eighth Amendment where they ignore

28   known serious medical needs presented by an inmate appeal.  *Coston*, 2013 U.S. Dist. LEXIS

1    27876, at \*17-22.  The district courts so holding have looked to factors such as medical training

2    and the authority of the appeals reviewer to take some form of corrective action to intervene and

3    stop the Eighth Amendment violation, or other factors demonstrating a deliberate indifference to

4    a known risk of serious harm.  *Id.*

5          Nevertheless, a district judge of this district found in *Coston*, 2013 U.S. Dist. LEXIS

6    46308, that the law was not settled on this issue in 2008, at the time that defendant Williams

7    reviewed plaintiff's appeal.  If it was not clearly established at that time that a doctor who

8    (allegedly) ignored an inmate's serious medical issue raised in an appeal could be liable under the

9    Eighth Amendment, defendant Williams would appear to be similarly entitled to qualified

10   immunity here.[2]  *Id.*; *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  However, the court need not

11   reach whether Williams's role in reviewing plaintiff's appeal subjects him to liability, because,

12   even assuming that it does, plaintiff has not raised a triable issue that Williams violated his rights.

13          Plaintiff has produced no evidence that defendant Williams knew of the alleged denial of

14   antibiotics and bandages until long after they had been provided.  Plaintiff's surgery was on

15   February 1, 2008.  He claims he did not receive antibiotics and bandages until 20 days later.  But

16   his second level appeal to defendant Williams was submitted on March 21, 2008 and well after

17   his need for bandages and antibiotics had been addressed.

18          Because plaintiff has produced no evidence showing that defendant Williams was aware

19   of his serious medical need for bandages and antibiotics during the 20 days following plaintiff's

20   /////

21          [2] How specific or broad the question is framed can distort the proper inquiry.  *See Saucier*
22   *v. Katz*, 533 U.S. at 201 ("The relevant, dispositive inquiry in determining whether a right is
     clearly established is whether it would be clear to a reasonable officer that his conduct was
23   unlawful in the situation he confronted." ).  Thus, the appropriate focus is not on whether the
     precise set of facts had previously been ruled upon in 2008.  Rather, it is whether at that time a
24   prison official in Williams' shoes would have known that failing to take some corrective action
     would violate the Eight Amendment.  Under the facts alleged here, the inquiry would reduce to
25   whether an official reviewing administrative appeals who acquired actual knowledge of the risk
     of serious harm, and having the authority to halt or prevent the injury (or the ability to report it to
26   a person with such authority) would have known that failing to do so would violate the Eighth
     Amendment.  In short, the immunity remains a qualified one and does not convert to absolute
27   immunity simply because the defendant gained knowledge of the risk in his role as a reviewer of
28   administrative appeals.

                                                 13

1    surgery, the undersigned recommends that summary judgment be granted in defendant Williams's

2    favor.

3    **IV.     Order and Recommendation**

4    For the reasons stated above, it is hereby ORDERED that:

5    1.   The Clerk of the Court shall send plaintiff one USM-285 form, one summons, an

6    instruction sheet, one copy of the Notice of Removal and attached Complaint (ECF

7    No. 2), and one copy of the Civil Cover Sheet (ECF No. 1).

8    2.   Within 28 days from service of this order, plaintiff shall complete the attached Notice

9    of Submission of Documents and submit it to the court with the completed summons

10   and USM-285 form and two copies of the cover sheet and complaint.

11   3.   Upon receipt of the necessary materials, the court will direct the United States Marshal

12   to serve defendant Cook pursuant to Federal Rule of Civil Procedure 5 without

13   payment of costs.  Failure to comply with this order may result in the dismissal of

14   defendant Cook.

15   It is further RECOMMENDED that the motion for summary judgment filed by defendants

16   Wohlers and Williams on July 3, 2013 (ECF No. 35) be denied as to defendant Wohlers and

17   granted as to defendant Williams.

18   These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

20   after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

23   within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

24   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

25   DATED:  February 27, 2014.

26

27   EDMUND F. BRENNAN
     UNITED STATES MAGISTRATE JUDGE

28

1

2

3                          UNITED STATES DISTRICT COURT

4                     FOR THE EASTERN DISTRICT OF CALIFORNIA

5

6    WILLIAM V. STICKLE,                           No.  2:12-cv-1397-KJM-EFB P

7                    Plaintiff,

8         v.                                        NOTICE OF SUBMISSION OF
                                                    DOCUMENTS
9    R COOK, et al.,

10                    Defendants.

11

12         Plaintiff hereby submits the following documents in compliance with the court's order:

13

14

15           1          completed summons form

16           1          completed forms USM-285

17           2          copies of the endorsed complaint

18   Dated:

19

20                                        _____

21                                                  Plaintiff

22

23

24

25

26

27

28
                                               15